CLEVELAND J. MARCEL, Sr., Judge Pro Tern.
This is an appeal from a judgment of the trial court dismissing plaintiff-appellant’s suit to have a judgment rendered by a New York Court recognized and made executory.
Some time prior to May, 1970, representatives of Franklin Printing Co., Inc. of New Orleans, Louisiana, defendant-appel-lee, contacted plaintiff McS II, Inc., a New York corporation domiciled and doing business in New York state for the purpose of arranging a schedule to photograph items for inclusion in a catalog of Coleman E. Adler & Sons, Inc. Franklin was printing this catalog for Adler.
On May 8, 1970, Mr. Carling Dinkier III, secretary-treasurer of defendant-appel-lee, Franklin, wrote to McS II, Inc. and in this correspondence stated:
“Once you have set up a definite shooting schedule, either Joe or myself will probably come up to New York to oversee some of the shooting.”
Dinkier did go to New York in August, 1970. Furthermore, on August 5, 1970, Franklin issued their purchase order No. 8865 to plaintiff-appellant. Franklin has refused to pay the sums alleged due by McS II, Inc.
McS II, Inc. instituted proceedings No. 50625-1971 in the Civil Court of the City of New York, County of New York. Franklin was cited under the New York Long Arm Statute. Judgment was rendered in the New York court on March 1, 1972.
On April 21, 1972 McS II, Inc. sought to have its judgment recognized and/or made executory in the Civil District Court for the Parish of Orleans. Franklin filed exceptions of no cause of action and no right of action; McS II, Inc. filed a motion for summary judgment. The trial judge dismissed the exceptions of no cause and no right of action and denied plaintiff-appellant’s motion for summary judgment. Counsel then submitted the matter on the merits without the introduction of further evidence and a final judgment dismissing McS IPs petition was rendered.
The facts herein are not disputed and the sole issue addresses itself to the proper application of the New York court of the Long Arm Statute. The New York proceedings, however, are subject to re *97 view by the Louisiana court to determine compliance with due process requirements under the United States Constitution. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Basically the New York statute is the same as the Louisiana “Long Arm Statute,” in that its provisions prescribe that jurisdiction will attach over any non-domiciliary who in person or through an agent transacts any business within the state. The Louisiana Supreme Court’s latest guidelines on what minimum contacts within a state are sufficient to afford a defendant due process of law with the United States Constitution are set forth in Drilling Eng., Inc. v. Independent Indon. Amer. Pet. Co., 283 So.2d 687 (La.1973) and interpreting R.S. 13:3201 stated that the purpose of R.S. 13 :3201 was:
“ . . .to extend the personal jurisdiction of Louisiana Courts over non residents to the full limits of due process under the Fourteenth Amendment.”
Comment (d) of the Louisiana State Law Institute, which appears beneath the statute explains the scope intended to be given to “transacting any business”:
“(d) ‘Transacting business’, ... is a term which is much broader than ‘doing business’ as defined by earlier Louisiana cases, . . . It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase ‘engaged in a business activity’ of R.S. 13:3471(1).”
The Supreme Court quoted the following from International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) in the Indonesia case:
“Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice’.”
In the Indonesia case, the parties met in Lafayette, Louisiana, for approximately two (2) hours. At this meeting, the parties agreed upon terms of a contract whereby plaintiff would furnish engineering services to the defendant in Indonesia. The contract was signed in Lafayette, Louisiana. By the terms of the contract plaintiff would supply operational engineers in Indonesia for a period of six months.
In addition to the meeting in Lafayette, operational and personnel problems were discussed by long distance telephone at least twice a week over the six month period. Further, plaintiff was requested to and did furnish advice to defendant’s office on job progress based upon information furnished from defendant’s office.
We have in the instant case circumstances involving a business transaction based upon a contract for services to be rendered in New York. The transaction required the scheduling and photographing of certain items in a catalog of Coleman E. Adler & Sons, Inc. Mr. Carling Dinkier III, secretary-treasurer of defendant-appel-lee traveled to New York to attend to some of the details of the project.
It is significant that Franklin made the contact in New York that gave rise to the contract between the parties. The business was not solicited by the plaintiff, rather the initial contact was made by Franklin. It is most significant that Franklin’s agent went to New York to attend to the details of the project. Also very significant is Franklin’s issuance of the purchase order in the month of August. This was not a transaction involving the mere purchase or sale of goods on a one instance basis but a prolonged matter which had the effect of a continuing transaction during this period.
Following the guidelines set forth by the Louisiana Supreme Court in the Indonesia case which prescribe those circumstances constituting a denial of due process *98 under the United States Constitution, and based on the foregoing facts, we must conclude that defendant was transacting business within the . State of New York. There was sufficient contacts to subject Franklin to the personal jurisdiction of the New York courts without Franklin being denied due process of law or offending the “traditional notions of fair play and substantial justice.”
The judgment of the trial court is reversed.
Reversed.